Filed 8/14/26  P. v. S.B. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>S.B.,<br><br>    Defendant and Appellant. | A174526<br><br>(Napa County Super. Ct.<br>  No. 20243683502) |

S.B. became a ward of the juvenile court after admitting a felony assault against her mother in 2024.  After being released to the supervision of her parents, S.B. was arrested for a series of theft-related offenses, misconduct at school, and noncompliance with the terms of her probation.  S.B. was again released to her parents, only to be returned to juvenile court for failure to comply with its directives or those of the probation department.  S.B. admitted the violation and was committed to an out-of-home placement at the Skyline Academy.

S.B. now appeals "the juvenile court's decision not to set a term of confinement" for the order committing S.B. to the Skyline Academy.  S.B.'s court appointed appellate counsel asks us to independently examine the record in accordance with *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), to determine if there are any arguable issues that require briefing.  (See also *In re Kevin S.* (2003) 113 Cal.App.4th 97, 99 [concluding "a delinquency

1

proceeding is sufficiently similar in substance and import to a criminal prosecution that indigent juveniles, like criminal defendants, are entitled" to *Wende* review].) Counsel advised S.B. of her right to file a supplemental brief, but she has not timely done so. After an independent review of the record, we find no meritorious issues. Accordingly, we affirm.

## BACKGROUND

On January 10, 2024, S.B. was arrested in Napa County for the assault of her mother, resulting in bruising, swelling of the eye, and two broken ribs. S.B. admitted a violation of Penal Code section 245, subdivision (a)(4), assault with force likely to cause great bodily injury, and was transferred to Sonoma County for disposition.[1] In September 2024, the juvenile court declared S.B. a ward of the court pursuant to Welfare and Institutions Code[2] section 602 and committed her to the care, custody, and control of her parents, returning her to the home of her father in Sonoma County, but permitting peaceful visitation with her mother in Napa County. The court imposed the "standard terms and conditions" of probation including the order that S.B. not leave Sonoma County without the permission of her parent, guardian, or probation officer and maintain a 9:00 p.m. curfew; S.B. was also ordered to complete 40 hours of community service.

On March 5, 2025, S.B. was arrested in connection with the theft of over $1,366 worth of merchandise from a Target store in Santa Rosa.

---

[1] S.B. lived on a "week on week off basis" with her mother in Napa County and with her father in Sonoma County and attended school in Sonoma County.

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

2

Criminal charges were filed, along with a section 777 petition[3] to revoke her probation based on the new arrest and an incident at school—S.B. was alleged to have had a "verbal altercation" where she "attempted to physically assault a staff member"—that, combined with her "history of 'aggressive' behaviors on campus," resulted in S.B. being "exited from the school."  In April, S.B. admitted her violation of probation and a felony violation of Penal Code section 487, subdivision (a); at her May 2025 disposition hearing, S.B. was restored on probation and returned to her home with the added direction that she complete "1-2 weekend work crews" and stay away from the Target store.

On July 7, 2025, the probation department filed a new section 777 petition to violate S.B.'s probation for failing to tell her parents where she was or return home when asked, failing to report to the Juvenile Justice Center (JJC) and submit to a chemical test as directed, going to Lake County without permission, and using marijuana.  S.B. ultimately reported to the JJC and was placed on electronic monitoring and directed to go to her mother's home in Napa County.[4]  Instead, the electronic device showed S.B. went to a park in Santa Rosa, the Costco shopping area, and the Target store she had been directed to stay away from, before going to her father's Sonoma County residence at 1:00 a.m. the next day and her mother's the following afternoon.  S.B. admitted the probation violation and, in view of the father

---

[3] "After disposition, the juvenile court retains the authority to modify its orders regarding a minor under its jurisdiction," and section 777 sets forth the notice and hearing procedure required for modification of an order removing the minor from the custody of parent or guardian and commitment to confinement.  (*In re D.N.* (2022) 14 Cal.5th 202, 207.)

[4] S.B.'s father had reportedly been arrested for the possession of narcotics for sale.  (Health & Saf. Code, § 11378.)

"being unable to provide adequate supervision and the inability to control the minor" and S.B.'s failure to attend school since her expulsion in March 2025, the matter was transferred to Napa County, where the mother continued to reside.

The July 2025 disposition report details a troubling history of "physical, sexual, and emotional abuse and general neglect" in the homes of the parents that includes 38 referrals to the child welfare system between December 2010 and July 2025. In 2020, S.B. became a dependent of the court under section 300 in separate dependency proceedings and was placed in a care facility out of the home until May 2023, when her case was dismissed and she was returned to the care of her parents.

The probation department expressed "extreme[] concern[] with the minor's behavior and current circumstances," which included the minor "camping out in tents" instead of returning to either parent's homes and being exposed to methamphetamine use in the home of her father and with her paternal grandmother. Additionally, S.B. had not been in school since March 2025, refused to participate in "Independent Study," and "almost all of the [school] reports involve physical violence on staff and peers." The disposition report complained of the lack of supervision in S.B.'s life: "the father is not providing adequate supervision [n]or has the parenting skills to adequately supervise the minor," and, although the mother's home "is more appropriate than the father's," "probation is concerned with the history of instability and severe conflict between the minor and her mother." In particular, S.B. had recently reported that if she was returned to the home of her mother "she would kill herself and her mother." The probation department opined, "a large amount of work needs to be done before the minor can be safely released into the community, which appears will take a

4

significant amount of time" as services offered through her prior school, family therapy, and wraparound services "all were unsuccessful." It concluded, "an escalation of services and support was essential" and recommended placement in the Skyline Youth Academy program.[5]

On August 6, 2025, the date of the uncontested disposition hearing, the probation department filed a supplemental letter with the court detailing the most recent six of 25 "calls to service" to S.B.'s mother's address between September 2024 and July 2025. Mother had called for assistance because she was "upset with how the minor was speaking to her" and felt "threatened" and "bullied" by S.B., who did not respect her and would "do as she pleases." Mother reported that S.B. was lighting fires in her room and had taken or stolen mother's cat, bearded dragon, items of clothing, vapes, and some prescription medication. These reports "appear[ed] to further support the Probation Department's recommendation that the minor is unable to safely reside in the parent's home without serious intervention while considering what is in the best interests of the minor at this time."

At the disposition hearing in Napa County, the district attorney agreed with the recommendation of the probation department. S.B.'s attorney shared S.B.'s request to instead return to the home of either parent and "work out the conflicts"; counsel also represented S.B. was willing to engage in "counseling and therapy" and potentially take medication if advised. S.B.

---

[5] The Skyline Academy was described as "a program with phases based on the Stages of Change within the structure of the juvenile hall. The program provides variety of individualized services focused on behavioral change which will be provided to the minor and her family" and includes a "risk needs assessment which will identify treatment needs, and an individual case plan will be created," along with the development of a "transition plan for the minor and her family."

directly spoke to the court and explained she "realize[d] now that there's bigger consequences to my actions now that I'm older."

The juvenile court noted the "pretty lengthy" nature of the disposition report that indicated the probation department had "put a lot of thought into it." The court explained, "I'm just not comfortable releasing you to your Mom or your Dad right now," and "I think you could thrive in [the Skyline Academy]." The juvenile court adopted the recommendation of the probation department, declared S.B. a ward of the Napa County Juvenile Court, and temporarily placed her in the care of the probation department, which "contemplate[d]" placement at the Skyline Academy. While attending the Skyline Academy, the court authorized placement of S.B. "in the Napa County Juvenile Hall not to exceed fourteen (14) days, in lieu of terminating placement," specified that S.B.'s "[m]aximum confinement is three years, eight months," and scheduled the matter for a 15-day placement review hearing.

At the 15-day placement hearing held on August 20, 2025, the probation department confirmed that S.B. had been placed at the Skyline Academy and was "trying her best to learn the rules at Skyline and engage in the services, the groups, and do homework and things that are asked of her." She had "little bumps on the road at Skyline" but was "really, really . . . putting her best effort at this moment to do well and make the best of it. . . ." When asked by the court how it was going, S.B. responded, "It's all right." S.B.'s counsel asked on S.B.'s behalf, "if the court would express a term of confinement in this matter that is not the maximum term for [S.B.'s] time at the Skyline Academy." The court explained, "it's really up to [S.B.]." The probation officer added, "It really varies day-by-day . . . in terms of their points and they're doing well and their behavior, what's going on, their

6

engagement, and like MRTs [Moral Reconation Therapy], the staffs, the steps. . . . [I]t takes on average, probably a year, to get through the program. Maybe a little less if you're running a completely perfect program, but that's probably the average." The court added that during different phases in the program, S.B. would be permitted to leave "to attend work or whatever" and "have some interactions out in the community as well" while she's still attending the Skyline Academy; "So I can't impose a specific term that she is enrolled in the program, . . . it really depends on the individual and how well they work with the steps and get through all the cases, but I have great optimism for [S.B.] that she's gonna do well." The court maintained the placement and the six-month review hearing scheduled for January 2026.

S.B. appeals the court's August 20 decision not to set a specific term of confinement at the Skyline Academy and seeks a *Wende* review.[6]

## DISCUSSION

If a minor "is adjudged a ward of the court on the ground that the minor or nonminor is a person described by Section 601 or 602, the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor . . . , including medical treatment, subject to further order of the court." (§ 727, subd. (a)(1).) In doing so, "the court shall order the care, custody, and control of the minor or nonminor to be under the supervision of the probation officer," and "It is the responsibility . . . of the probation agency to determine the appropriate placement for the ward once the court issues a placement order." (§ 727, subd. (a)(3), (4).) In

---

[6] S.B. filed her notice of appeal on October 7, 2025, making it timely as to the August 20, 2025 order but untimely as to the August 6, 2025 disposition. Accordingly, the disposition order is beyond our jurisdiction. (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 864 [failure to file timely notice of appeal deprived the appellate court of jurisdiction].)

determining the appropriate placement, "the probation officer shall consider any recommendations of the child and family," and "The court may, after receipt of relevant testimony and other evidence from the parties, affirm or reject the placement determination." (§ 727, subds. (a)(4) & (e).)

The court may also require the minor to complete a particular juvenile program without specifying its exact length, as long as the juvenile court "retains the supervisory authority to determine whether and when [the minor] successfully completes" the program. (*In re J.C.* (2019) 33 Cal.App.5th 741, 748 [rejecting the minor's contention that his commitment to the Youthful Offender Treatment Program without a termination date was an improper delegation of court authority to the probation department].) Such nonspecific orders are proper because, " 'When a minor is committed to a county facility and ordered to complete a treatment program, juvenile courts can and do delegate the day-to-day supervision of the minor, while retaining the ultimate authority to determine whether the minor has successfully completed the program.' " (*In re I.M.* (2020) 53 Cal.App.5th 929, 935, quoting *In re J.C.*, at p. 747.)

Here, the probation department made an out-of-home placement recommendation based on the minor's ongoing failure to comply with the terms of her probation after multiple criminal and probation violations and a demonstrated failure to successfully reside at the homes of either of her parents or attend school. The court adopted the placement recommendation after considering the disposition and supplemental reports submitted by the probation department and the comments of counsel, the parents, and S.B. and set the maximum term of confinement. When later asked to set a specific term for the Skyline Academy's duration, the court declined, explaining its reasoning in the context of the program, and scheduled the matter for further

review hearing, retaining supervisory authority.  Having independently reviewed the record in accordance with *Wende, supra*, 25 Cal.3d 436, we conclude there are no arguable issues.

## DISPOSITION

The August 20, 2025 order is affirmed.

DESAUTELS, J.


We concur:


STEWART, P. J.


MILLER, J.


*People v. S.B.* (A174526)